IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIAN HALLUM, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) Case No. 21-cv-137-GKF-SH |
| SHERIFF OF DELAWARE COUNTY, in his Official Capacity and, RONALD WILLIAMS, | ) ) ) |
|  | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is a motion seeking sanctions against Plaintiff Brian Hallum ("Brian") for spoliation of evidence. Defendants Sheriff of Delaware County and Officer Ronald Williams ("Williams") argue the failure to save certain surveillance video necessitates various sanctions, including an adverse inference and/or rebuttable presumption to the jury that the lost evidence was damaging to Plaintiff's position at trial. Neither party has requested an evidentiary hearing.

From the parties' submissions, it appears the evidence at issue was lost approximately 36 hours after the underlying incident, and Defendants have presented no evidence indicating Plaintiff reasonably foresaw this litigation within that short time frame. Defendants' motion will be denied.

**Background**[1]

Brian brought this lawsuit in 2021, but the events in question occurred almost two years earlier—on the night of March 29-30, 2019, when Brian claims Defendants violated his rights through the excessive use of force and false arrest. (*See* ECF No. 2.) It appears

---

[1] Because Defendants bear the burden of proof on the issue of sanctions (*see* Section I, *infra.*), the background includes only facts supported by evidence provided by the parties in their briefs, or any facts admitted by Plaintiff's counsel in their filings.

undisputed that, upset over personal issues, Brian consumed alcohol and cannabis on the premises of the medical marijuana dispensary he owned in Afton, Oklahoma, late in the evening of March 29th. (ECF No. 124 at 1, 3.) While in his store, Higher Health, Brian destroyed several items and set off the business's commercial burglary alarm. (*Id.*) This prompted a response by Williams and others, who found Plaintiff asleep in the passenger's seat of his vehicle in front of the business. (*Id.* at 1-2.)

At some point during the interaction that followed, Williams used an arm-bar technique to bring Plaintiff to the ground and restrain him. (*Id.* at 2.) Plaintiff was eventually arrested for public intoxication.[2] (*Id.*) Defendants appear to assert that sometime that night—it is not clear whether this was before or after the alleged use of force or the arrest—Brian told the officers he was going to call his attorney and also that he had 17 attorneys. (ECF No. 103 at 3-4; B. Hallum Depo. at 222:9-22, ECF No. 103-1 at 4.) However, the only evidence submitted to the Court shows that Brian has repeatedly denied any recollection that he threatened to sue anyone that night, that he claimed to have 17 lawyers, or that he said he would call his attorney. (B. Hallum Depo. at 172:9-23, 222:9-22, ECF Nos. 124-2 at 2 & 103-1 at 4.) It does show Brian eventually agreeing that "I probably did tell him at some point that I would call an attorney." (B. Hallum Depo. at 222:9-13, ECF No. 103-1 at 4.)

Pertinent to Defendants' motion, Higher Health had a video security system that included nine cameras and stored footage for approximately 36 hours before being overwritten. (B. Hallum Depo. at 107:10-14, ECF No. 103-1 at 2; A. Hallum Depo. at 165:25-166:18, ECF No. 124-1 at 5-6.) These videos are stored on a machine at Plaintiff's business, which Plaintiff has access to. (A. Hallum Depo. at 166:10-14, ECF No. 124-1 at

---

[2] Defendants' brief includes additional detail regarding their version of events (ECF No. 103 at 1-3), but no evidence is provided.

6.) Brian's wife, Amber Hallum ("Amber"), could also watch the surveillance on her phone. (*Id.* at 166:19-21.) In fact, on the night of the incident, she did just that. Amber received an alarm notification late on the 29th and, sometime thereafter, began using screen capture to record the surveillance video she could see on her phone. (A. Hallum Depo. at 166:22-167:16, ECF No. 103-2 at 5-6.)

At some point,[3] Amber also attempted to preserve the video captured by the security cameras by placing a "USB drive into the DVR and record[ing] it," but this did not work.[4] (A. Hallum Depo. at 131:3-13, ECF No. 103-2 at 3.) Amber did not seek assistance from the company that installed the cameras after this failed attempt. (*Id.* at 131:14-16.) In any event, Amber states she gave all the captured recordings to the attorney, and it appears Defendants received these captured recordings along with a longer recording that may have been saved off a DVR. (A. Hallum Depo. at 168:7-20, ECF No. 124-1 at 7.)

At another unknown time, Brian was shown some of the video by Amber and an attorney, Kathy Baker. (B. Hallum Depo. at 108:18-22, ECF No. 103-1 at 3.) The evidence provided to the Court does not indicate whether Brian simply viewed the video that has been produced in discovery, or if it was some other video.[5] (*Id.*) There is also no evidence

---

[3] There is no evidence regarding whether this was within the 36-hour window that the surveillance footage was available.

[4] Brian testified that he requested "none of the footage of [the] incident" be destroyed, that he hoped someone was saving it, and that he was told it was saved on a USB. (B. Hallum Depo. at 108:7-17, ECF No. 103-1 at 3.) Brian does not recall whether he made this request to the "security folks," his "security at work," or Amber. (*Id.*) Again, there is no testimony evidencing the time period when these events occurred. Amber, meanwhile, testified that Brian never asked for, and did not have, the video. (A. Hallum Depo. at 130:16-18, ECF No. 103-2 at 2.) She does not state whether he asked her to save any of it or not.

[5] Plaintiff was asked at his deposition whether he "had actually seen footage other than what's been produced in this case?" (B. Hallum Depo. at 108:23-25, ECF No. 103-1 at 3.) But, Defendants failed to include the answer to this question with their evidence.

3

indicating whether this consultation with an attorney occurred during the 36-hour window that the surveillance footage was available. When Brian eventually filed this lawsuit, two years later, he was represented by different counsel. (ECF No. 2.)

Defendants now argue that Brian spoliated evidence by failing to preserve the entire video from all nine cameras and, particularly, the video showing his actions <u>before</u> officers arrived on the scene. (ECF No. 103 at 3, 5.) Defendants argue Brian had a duty to preserve this evidence and that his failure to do so caused "prejudice to all the defendants in this lawsuit." (*Id.* at 5.) As such, Defendants request the Court issue various sanctions, including an adverse inference instruction to the jury that the lost security footage was damaging to Brian's position; a rebuttable presumption to the jury specifying the same; an order precluding Brian from presenting any claim or argument that could have been refuted by the lost security footage; costs and attorney fees for the filing of this motion; and the exclusion of any reference to Brian's alleged orthopedic or other physical injuries. (*Id.* at 11.)

**Analysis**

**I.    Rule 37 Sanctions for Failure to Preserve Electronically Stored Information**

Spoliation, generally, "includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *United States v. Koch Indus., Inc.*, 197 F.R.D. 463, 482 (N.D. Okla. 1998). While both Plaintiff and Defendants invoke the Court's inherent power to impose spoliation sanctions (ECF No. 103 at 6; ECF No. 124 at 4), the undersigned need not rely on such power. Rule 37(e), amended in 2015, "authorizes and specifies measures a court may employ if information that should have been preserved is lost, . . . specifies the findings necessary to justify these measures," and "forecloses reliance on inherent authority . . . to

4

determine when certain measures should be used." Fed. R. Civ. P. 37, advisory ctte.'s note, 2015 am., subdiv. (e). This rule "applies only to electronically stored information," or ESI. *Id.* Because the Court considers the information at issue to be ESI, Rule 37 controls.[6]

> Rule 37(e) states as follows:
>
> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> (A) presume that the lost information was unfavorable to the party;
>>>
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(1)-(2).[7] The party seeking sanctions bears "the burden of demonstrating that the requirements of Fed. R. Civ. P. 37(e) are met."[8] *Bush*, 2020 WL

---

[6] District courts within this circuit have consistently treated video evidence, such as the kind at issue here, to be ESI governed under Rule 37. *See, e.g., Bush v. Bowling*, No. 19-CV-00098-GKF-FHM, 2020 WL 5423986, at *1-2 (N.D. Okla. Sept. 10, 2020); *Graham v. Lone Grove*, No. 19-CV-00298-JFH, 2022 WL 2276337, at *1-3 (E.D. Okla. June 23, 2022).

[7] The law governing non-ESI spoliation, from which both Plaintiff and Defendants draw, applies a similar analysis—"Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)).

[8] However, Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other." Fed. R. Civ. P. 37, advisory ctte.'s note, 2015 am., subdiv. (e)(1).

5423986, at *2; *see also Nez v. United States*, 367 F. Supp. 3d 1245, 1268 (D.N.M. 2019) ("if a party seeks a finding of an adverse inference, that party also has the burden of proving bad faith"); *CCA Recordings 2255 Litig. v. United States*, No. 19-CV-2491-JAR-JPO, 2021 WL 2212758, at *6 (D. Kan. June 1, 2021) ("[t]he burden of proof by a preponderance of the evidence is on the party seeking sanctions based on the spoliation of evidence" (internal quotations omitted)).

### A. Duty to Preserve Evidence.

An initial consideration when assessing spoliation sanctions for lost information[9] is whether the party against whom sanctions are sought had a duty to preserve the evidence, and, if so, the scope of that duty. Rule 37(e) only applies when information is lost after "a duty to preserve arises." Fed. R. Civ. P. 37, advisory ctte.'s note, 2015 am., subdiv. (e). The rule does not create a new duty to preserve; instead, it looks to the common-law duty "to preserve relevant information when litigation is reasonably foreseeable." *Id*.

When deciding "whether and when a duty to preserve" exists, the court "should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Id.*; *see also Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-CV-02464-JWL-TJJ, 2016 WL 492743, at *5-6 (D. Kan. Feb. 8, 2016) (noting plaintiff's duty to preserve began when legal counsel for both parties were involved and plaintiff sent a cease and desist letter to defendant and another letter threatening legal action); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo.

---

[9] No party disputes that the complete video surveillance footage from the night of Plaintiff's arrest has been lost and cannot be replaced. (*See generally* ECF No. 103; ECF No. 124.)

6

2007) ("the duty to preserve relevant documents" requires "more than a mere possibility of litigation").

### B. Reasonable Steps to Preserve.

Once it is determined that a party—or future party—had a duty to preserve relevant evidence, the Court must consider whether reasonable steps were taken to preserve the information. Fed. R. Civ. P. 37(e). The rule "does not call for perfection," and "the routine, good-faith operation of an electronic information system" is a relevant factor for the court to consider, as is whether a party should have intervened in that routine operation. Fed. R. Civ. P. 37, advisory ctte.'s note, 2015 am., subdiv. (e); *see also Franklin v. Stephenson*, No. 20-CV-0576 MIS-JFR, 2022 WL 6225303, at *8 (D.N.M. Feb. 16, 2022) (reasonable steps may require suspending existing policies related to deleting or destroying files). In this reasonableness consideration, courts should be sensitive to a party's sophistication and the proportionality of preservation efforts. Fed. R. Civ. P. 37, advisory ctte.'s note, 2015 am., subdiv. (e).

### C. Rule 37(e)(1) vs. Rule 37(e)(2).

The Court's next steps are governed by the whether the loss was intentional or not. If not, the court considers sanctions only if another party has been prejudiced by the loss of information. Fed. R. Civ. P. 37(e)(1). Judges have discretion to determine how best to assess prejudice in particular cases, and the evaluation includes the importance of the lost information to the litigation. Fed. R. Civ. P. 37, advisory ctte.'s note, 2015 am., subdiv. (e)(1). There are a broad range of potential remedies available for such a prejudicial loss, but they cannot include those listed in Rule 37(e)(2) without additional findings.

If the spoliating party "acted with the intent to deprive another party of the information's use in the litigation," however, the Court may grant more severe sanctions, such as an adverse inference or unfavorable presumption. Fed. R. Civ. P. 37(e)(2). Rule

37 does not "authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." Fed. R. Civ. P. 37, advisory ctte.'s note, 2015 am., subdiv. (e)(2).[10] If intent is found, there is no need to consider prejudice; the finding of intent supports both an inference that the lost information was unfavorable and that the opposing party was prejudiced. *Id.*

## II. Defendants Have Not Shown a Duty

Here, based on the scant evidence provided, the Court does not find Brian to have had a duty to preserve the video in the day-and-a-half between his encounter with Officer Williams and its automatic deletion. Defendants' brief mashes together several events and assumes (without evidence) that they occurred in this 36-hour period and, further, that Brian made certain statements (again, without offering evidence that they were made).

For example, Defendants repeatedly state that Brian, Amber, and their attorney Kathy Baker watched the video "shortly after the incident." (ECF No. 103 at 4, 5; ECF No. 130 at 2, 3.) But the only evidence cited for this statement contains no indication as to when the video (or what video) was watched. As Brian testified,

> Q. And then after [asking someone to save the footage] did you check to see? Did you actually see some other footage?
>
> A. They showed me some footage.
>
> Q. Who is they?
>
> A. The attorney, Kathy Baker and Amber.
>
> Q. All right. So at one time you had actually seen footage other than what's been produced in this case?

---

[10] This is in line with pre-Rule 37(e) Tenth Circuit precedent. *See, e.g., Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) ("Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case.").

>*[answer omitted]*

(B. Hallum Depo. at 108:18-25, ECF No. 103-1 at 3.) Similarly, Defendants note Brian's testimony that he asked someone to save the footage (ECF No. 103 at 4) and point to Amber's effort to save video onto a USB drive (*id.*), but—again—there is no indication of <u>when</u> these events occurred. Brian testified,

> Q. Did you make any effort to go and make sure, after this incident, that none of the footage of this incident got destroyed?
>
> A. I did want to make sure, so I requested, but I didn't do it myself. So I hope that somebody was saving it. I was told it was saved on a USB, so.
>
> Q. Who did you ask?
>
> A. I can't remember if it was the security folks, or if it was our security at work, or if it was Amber. I'm not -- one of those three, but I'm not sure.

(B. Hallum Depo. at 108:7-17, ECF No. 103-1 at 3.) And, Amber testified,

> Q. . . . Did you -- does Brian have access to all saved video of the incident.
>
> A. No.
>
> Q. What video does he not have access to?
>
> A. He's never asked me for it. He doesn't have it.
>
> Q. Do you have custody of all of the video from the incident?
>
> . . .
>
> THE WITNESS: I don't have all of the video.
>
> Q. Do you have custody of many different video clips?
>
> . . .
>
> THE WITNESS: I have what I recorded on my cell phone.
>
> Q. . . . Okay. And did you make any effort to preserve the video captured by the nine security cameras?
>
> A. Yes.
>
> Q. What effort did you make?

9

> A. I tried to save it on a USB drive.
>
> Q. Okay. And how did you do that?
>
> A. I placed the USB drive into the DVR and recorded it.
>
> Q. Did it work?
>
> A. No.

(A. Hallum Depo. at 130:12-131:13, ECF No. 103-2 at 2-3.) This testimony leaves Defendants arguing that <u>Amber's</u> capture of the encounter on her cell phone is somehow evidence that <u>Brian</u> intended to sue—yet, Amber denied knowing Brian intended to sue the night of the incident or the next day.[11] (*Id.* at 131:17-25.) The Court cannot infer that Brian reasonably foresaw litigation based on Amber's actions, which appear to have occurred before (and continued during) the events for which Brian is now suing.

Defendants next claim "Plaintiff told officers on the night of the incident that he would be calling his attorneys about the event." (ECF No. 103 at 3-4.) Yet, Defendants offer no evidence that such a statement was actually made (apart from their own counsel's comments at the deposition). Instead, Brian testified,

> Q. . . . All right. And not only that, you were threatening to sue on the very evening of the incident; correct?
>
> A. I do not recall.
>
> Q. All right. Can you deny that you were threatening to sue before you were even arrested?
>
> A. I do not recall.
>
> Q. Can you deny that you were trying to bully officers by saying, I have 17 lawyers?
>
> . . .

---

[11] As Mrs. Hallum did not know within the next 24 hours that her husband planned on filing a lawsuit, there would be very little time for her to have attained such knowledge before the video was overwritten.

> THE WITNESS: I don't recall saying that.
>
> Q. . . . That's pretty funny, it'd be pretty absurd to say that, wouldn't it?
>
> A. Yeah, I don't recall saying that. I'm sorry.
>
> Q. All right. Well, I'm telling you that you said you had 17 lawyers.
>
> . . .
>
> Q. So, did you tell him[12] that you're going to call your attorney?
>
> A. I probably did tell him at some point that I would call an attorney. I don't recall telling him that.
>
> Q. Did you tell him you had 17 attorneys?
>
> A. I definitely don't recall telling him that.
>
> Q. Are you denying that?
>
> A. I would not have told him I have 17 attorneys.
>
> Q. Would you have told Williams you have 17 attorneys?
>
> A. I don't have 17 attorneys. No, I wouldn't have said --

(B. Hallum Depo. at 172:9-25 & 222:9-22, ECF No. 124-2 at 2 & 103-1 at 4.) Even if Defendants had provided evidence from others that Brian said he was going to call an attorney and that he had 17 attorneys, it is not clear whether this statement was made when Plaintiff was allegedly "yelling in a slurred tone of voice"—which occurred before he was brought down by Williams (the alleged excessive use of force in this case)—or later, when Plaintiff allegedly "again became emotional and began violently punching holes in the interior wall of the business"—which was before his alleged false arrest. (ECF No. 103 at 2-3.) The Court is loath to construe unsubstantiated and allegedly drunken, emotional, and fanciful statements—perhaps made before the events giving rise to the litigation—as

---

[12] This passage, which occurs several pages after the first quoted testimony, is provided without the context necessary to determine who "him" is. It does appear the referenced individual is someone other than Defendant Williams.

indicative of Brian reasonably foreseeing the litigation that occurred two years later. Compared to other cases where courts have found that a duty to preserve evidence arose <u>before litigation</u>, the Court is not convinced this is enough to trigger Plaintiff's duty. *Cf., e.g.*, *Cousino v. Mass. Mut. Life Ins. Co.*, No. 12-CV-532-JHP-TLW, 2014 WL 11532284, at *6-7 (N.D. Okla. July 9, 2014) (duty arose when plaintiff retained counsel and that counsel sent a letter to defendant indicating plaintiff would "exhaust all legal remedies").[13]

This case is different from situations where some courts have found a duty to preserve "as soon as the triggering incident occurs and prior to when a claim is filed." (ECF No. 130 at 3-4 (citing *Taylor v. New York*, 293 F.R.D. 601, 610 (S.D.N.Y. 2013).) In *Taylor*, the court found the New York Department of Correction's duty to preserve surveillance footage depicting an inmate assault arose within a week of the assault "because the DOC has documented that, in the hundreds of other instances where inmates have been injured while in DOC custody, lawsuits by the injured inmates against the agency have invariably ensued." *Taylor*, 293 F.R.D. at 610 (noting similarity to slip-and-

---

[13] Other courts have found the duty to arise (1) at latest, when party's lawyer sent a litigation hold letter to the plaintiff, *Wolff v. United Airlines, Inc.*, No. 1:18-CV-00591-RM-SKC, 2019 WL 4450255, at *6 (D. Colo. Sept. 17, 2019); (2) when plaintiff did not dispute knowing litigation was imminent and had immediately consulted with multiple attorneys after secretly recording conversation with employer, *Mueller v. Swift*, No. 15-CV-1974-WJM-KLM, 2017 WL 3058027, at *3 (D. Colo. July 19, 2017); (3) when plaintiff contacted counsel—who would eventually represent them in the litigation—to discuss their belief that a violation occurred, *EBIN N.Y., Inc. v. SIC Enter., Inc.*, No. 19CV1017PKCTAM, 2022 WL 4451001, at *8 (E.D.N.Y. Sept. 23, 2022); or (4) when plaintiff's contemporaneous messages showed intent to sue and plaintiff had begun compiling evidence, *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 336-37 (D. Ariz. 2022). But, no duty has been found where (1) plaintiff may have been considering suit, but there was no evidence that it had decided to sue, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 539-40 (S.D.N.Y. 2022); or (2) a terminated employee reset an iPad after saving certain documents, but was an individual with no litigation experience, and where the evidence did not show he knew he was planning to sue, *Rao v. St. Jude Med. S.C., Inc.*, 631 F. Supp. 3d 678, 713 (D. Minn. 2022).

fall cases involving large retailers). Unlike the New York DOC, Brian is an individual plaintiff, and there is no evidence that his prior experience indicated to him that a lawsuit would invariably result from his encounter with Williams that night.

Here, to demonstrate that sanctions were proper under Rule 37(e), Defendants had an admittedly tall task. Because the video surveillance system at Higher Health overwrites recorded footage after roughly 36 hours, Defendants had to show a duty to preserve such evidence within that time frame. Particularly, Defendants had to show Plaintiff was on notice that litigation was likely almost immediately after his arrest. Based on the evidence submitted to this Court, the undersigned finds Defendants have not met this burden.

Having found no duty to preserve, the Court does not reach the other requirements for sanctions under Rule 37.

IT IS THEREFORE ORDERED that *Defendants' Motion for Sanctions for Spoliation of Evidence* (ECF No. 103) is DENIED.

ORDERED this 29th day of September, 2023.

                                                  SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
                                                  UNITED STATES DISTRICT COURT